UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LINCOLN DILLE, II**                                                                                        **PLAINTIFF**

**v.**                                                     **3:16-cv-686-FKB**

**HINDS COUNTY, TYRONE LEWIS,**
**SHERIFF VICTOR MASON,**
**CAPTAIN SANDRA DALTON**                                                **DEFENDANTS**

## ORDER

This cause is before the Court on Defendants' motions for summary judgment, [40] and [52]. For the following reasons, the Court finds that the motions should be granted in part and denied in part.

Plaintiff Lincoln Dille, II, was a pretrial detainee in the custody of Hinds County, Mississippi, from February 2014 until August 2018. His suit, brought pursuant to 42 U.S.C. § 1983, primarily concerns his time at the Jackson Detention Center. Dille is proceeding *pro se* and *in forma pauperis* and has named four defendants: Hinds County, Mississippi, former Hinds County Sheriff Tyrone Lewis, current Hinds County Sheriff Victor Mason, and Captain Sandra Dalton. Each defendant has moved for summary judgment.

### Factual Allegations

In February 2014, authorities charged Dille with murder. [1] at 4; [52-1] at 36. Hinds County officials initially housed him at the Raymond Detention Center in Raymond, Mississippi. [1] at 4. However, Dille received threats from other Raymond detainees who had known Dille's alleged victim. *Id.* As a result, Hinds County officials transferred Dille to the Jackson Detention Center, and he was placed in protective custody.[1] [52-2] at 12, 17.

---

[1] Dille claims that officers "procrastinated" and took too long to transfer him from the Raymond Detention Center to the Jackson Detention Center. [6] at 3-4. However, at the omnibus hearing, Dille testified that he was originally only at the Raymond Detention Center "for like a day. . . ." [52-2] at 12.

1

Each of the events giving rise to Dille's suit took place during the three years he was housed at the Jackson Detention Center. He alleges the following:

On July 10, 2014, Dille requested that he be allowed to leave protective custody. [52-1] at 29-30. He signed a waiver that same day confirming his request. *Id.* at 30; [52-2] at 17. In August 2014, a group of inmates assaulted Dille, causing him to lose three teeth. [1] at 4; [52-2] at 7. Although Dille had previously had arguments with some of the inmates involved in the assault, he does not recall reporting problems with them to jail personnel prior to the attack. [52-2] at 9.

In March 2016, officials moved Dille into a cell without a sink or a toilet. [1] at 5-6. Dille alleges that he was housed in this cell for between one and two weeks. [52-2] at 10. He contends that he had no access to a toilet from 11 p.m. until 5 or 6 a.m. each night, and that he was forced to urinate in a cup. *Id.* According to Dille, he filed suit against Sandra Dalton relating to this cell assignment because she "was captain around [that] time." *Id.* at 15.

In May 2016, Dille claims an officer, Lt. Irving, and a group of sheriff's deputies used excessive force against him and other inmates. [6] at 5. He alleges that the officers falsely accused him and the other inmates of putting a hole in a cell wall. *Id.* According to Dille, the officers "demanded [that they] crawl out of [their] cells as they beat [them] with flashlights." *Id.* Officers also hit Dille with a nightstick several times. [52-2] at 11. Officers tased two other inmates and "stomped [Dille's] back and beat[] [them] as [they] crawled back in [their] cells." [6] at 5.

Dille also alleges that officers at the Jackson Detention Center read and were "faking" his legal mail. [13] at 1. He contends that they threw away some of his letters to the Court. *Id.* at 2. He bases his allegations on the fact that the Court did not receive some of his letters. [52-2] at 13-14. He alleges that other inmates also reported that some of their letters never arrived at the intended destinations. *Id.* at 14. Dille filed suit against Sandra Dalton relating to these problems

because she was "over the mail, too." [52-2] at 15. "She had dealings with the mail situation . . . ." *Id.* Dille also claims that Dalton threatened to transfer him from the Jackson Detention Center back to the Raymond Detention Center because he had written to the ACLU. [13] at 1.

**Procedural History**

Defendants filed their first motion for summary judgment on June 19, 2018, alleging that Dille had failed to exhaust available administrative remedies prior to filing suit. [40]. The Court provided a copy of the motion to Dille at the June 27, 2018, omnibus hearing and set a deadline of July 13, 2018, for him to respond. [52-2] at 22-23. Defendants filed their second motion for summary judgment on November 14, 2018. [52]. Dille did not file a response to either motion.

**Analysis**

Addressing first Dille's claim against Hinds County, "[t]he Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom, or practice of that local government entity was the 'moving force' behind the constitutional violation." *Mann v. King*, No. 1:13-cv-491-MTP, 2014 WL 808501, at *2 (S.D. Miss. Feb. 28, 2014)(quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). At the omnibus hearing, the Court asked Dille his reasons for suing each party. Regarding Hinds County, he responded, "I really kind of investigated, and I really just [came] to understand that I may have to sue Hinds County because that's who [the officers] work for, and I wasn't sure if Hinds County would be immune to the charges, but I just felt it would be an obligation." [52-2] at 15-16.

Dille does not allege that he suffered harm as a result of a Hinds County policy, custom, or practice. Nor has he provided evidence that such a policy, custom, or practice existed. Accordingly, Hinds County is entitled to summary judgment in its favor.

Next, the Court turns to Dille's claims against Sheriffs Lewis and Mason. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.*

Dille does not allege that either Sheriff Lewis or Sheriff Mason were personally involved in any of the events described in his complaint, nor does he allege that either committed any wrongful conduct. When asked at the omnibus hearing why he sued Sheriff Lewis, he responded, "I was aware that he had to be responsible for what his sergeants and lieutenants - - for the actions, I figured he would be responsible for the actions." [52-2] at 15. He confirmed there was no other reason for including Lewis as a defendant. *Id.* He explained that he was suing Sheriff Mason "for the same reason [as Sheriff Lewis], because of what his lieutenants and sergeants did." *Id.* Because Dille cannot show that Sheriffs Lewis or Mason were either personally involved in the incidents at issue or that they committed some type of wrongful conduct with a sufficient causal connection to those incidents, Sheriffs Lewis and Mason are also entitled to summary judgment in their favor.

The only remaining defendant is Sandra Dalton. Dille alleges that she was a captain at the Jackson Detention Center during the one-to-two weeks that he was assigned to a cell without a toilet. He further alleges that she was over the jail's mail system during the time that some of his mail went missing. Like Sheriffs Lewis and Mason, both allegations against Dalton are supervisory in nature. Dille does not allege that Dalton personally threw away his mail or that she personally assigned him to a cell without a toilet. Nor does he allege that she committed some type of wrongful conduct connected to the disappearing mail or his cell assignment. He only alleges that

she was a supervisor with a connection to both issues. Accordingly, he fails to assert a viable § 1983 against Dalton.

However, Dille makes one additional allegation against Dalton. He contends that she threatened to transfer him from the Jackson Detention Center to the Raymond Detention Center because he corresponded with the ACLU. Dille received at least one letter from the ACLU on November 23, 2016, via the Jackson Detention Center's mail screening process. [52-1] at 23. Dalton does not address Dille's allegation in the affidavit she submitted in support of her motion for summary judgment. *See* [52-4] at 1-2. Nor does she address it in the actual motion or supporting memorandum. [52] and [53].

While Dalton does not respond to this specific allegation, she does contend that Dille failed to exhaust his available administrative grievances prior to filing suit. However, Dille testified under oath that he submitted several grievances and written "requests" of which Defendants had no record. [52-2] at 21-22. He specifically testified that he submitted a grievance regarding the "ongoing mail issue," which could conceivably include Dalton's alleged threat concerning his correspondence with the ACLU. *Id.* at 22.

The Court finds that it should deny without prejudice Defendants' motions for summary judgment, [40] and [52], with regard to this specific claim against Sandra Dalton. The Court sets a deadline of April 12, 2019, for Dalton to file another motion for summary judgment addressing this claim.

**Conclusion**

Defendants' motions for summary judgment, [40] and [52], are granted in part and denied in part. The Court grants Defendants' motions for summary judgment as to all claims against Hinds County, Mississippi, Sheriff Tyrone Lewis, and Sheriff Victor Mason. The Court grants summary

5

judgment in favor of Sandra Dalton as to all claims against her, except for Dille's claim that she threatened to transfer him to the Raymond Detention Center due to his correspondence with the ACLU. Dalton may file another motion for summary judgment regarding that claim consistent with the terms of this Order.

SO ORDERED, this the 18th day of March, 2019.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE